1
2
3
4
5

**Charles Slack-Mendez (014894)**
**Breann Elizabeth Slack (035996)**
SLACK-MENDEZ LAW FIRM
2710 South Rural Road
Tempe, Arizona 85282
Telephone: (480) 829-1166
Email: Charles@SlackMendez.com
Email: Breann@SlackMendez.com
*Attorneys for Plaintiffs*

6
7
8
9

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

10

Jose Beltran, individually and on behalf of
the statutory beneficiaries of Francisco L
Beltran; and Georgina Beltran Kemp in her
capacity as the Personal Representative of
the Estate of Francisco L. Beltran,

              Plaintiffs,

vs.

Santa Cruz County, a public entity;
Antonio "Tony" Estrada, Previous Santa
Cruz County Sheriff, in his individual
capacity; David Hathaway, Santa Cruz
County Sheriff, in his official capacity;
Anna "Gloria" Urias, in her official and
individual capacity; DO Joel Hathaway, in
his individual and official capacity;
Unknown Santa Cruz County Sheriff
Detention Medical Personnel 11-20, in
their individual capacities; Unknown Santa
Cruz County Sheriff Detention Officers 21-
30, in their individual capacities,

              Defendants.

**No. CV 20-00462-TUC-DCB**

**PLAINTIFFS' FIRST AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

(The Honorable David C. Bury)

24

      Jose Beltran, in his individual capacity and on behalf of the statutory beneficiaries

of Francisco L Beltran and Georgina Beltran Kemp in her capacity as the Personal

Representative of the Estate of Francisco L. Beltran, for their Complaint against

Defendants State of Arizona, Santa Cruz County, Antonio "Tony" Estrada, Michael

Soto, Anna "Gloria" Urias and DO Joel Hathaway, alleges as follows:

-1-

## **PARTIES**

1. Francisco L. Beltran was, at the time of his death on January 5, 2020, a resident of Santa Cruz County, Arizona.

2. Jose Beltran and Martha Beltran are the surviving parents Francisco L. Beltran and residents of Santa Cruz County, Arizona.

3. Jose Beltran brings this action on his own behalf, on behalf of all statutory beneficiaries of decedent Francisco L. Beltran and Georgina Beltran Kemp in her capacity as the Personal Representative of the Estate of Francisco L. Beltran.

4. Plaintiffs, Francisco Beltran Jr., Estevan Beltran, and Yazmine Beltran are the children and statutory beneficiaries of decedent Francisco L. Beltran and his estate and are residents of Pima County, Arizona.

5. Defendant, Antonio "Tony" Estrada ("Sheriff Estrada") was the duly-elected Sheriff of Santa Cruz County, Arizona, acting under color of law, and in charge of the Santa Cruz County Sheriff's Office and the Santa Cruz County Detention Center, located at 2710 North Congress Drive, Nogales, Arizona 85621 (hereinafter "Santa Cruz County Jail"), which is operated by the Santa Cruz County Sheriff's Office. Defendant Sheriff Estrada was responsible for ensuring the health and safety of all incarcerated inmates incarcerated in the Santa Cruz County Detention Center, before and on January 5, 2020.

6. Defendant, David Hathaway ("Sheriff Hathaway") is the newly-elected Sheriff of Santa Cruz County, Arizona, acting under color of law, and in charge of the Santa Cruz County Sheriff's Office and the Santa Cruz County Detention Center, located at 2710 North Congress Drive, Nogales, Arizona 85621 (hereinafter "Santa Cruz County Jail"), which is operated by the Santa Cruz County Sheriff's Office. Defendant Sheriff Hathaway is responsible for ensuring the health and safety of all incarcerated inmates incarcerated in the Santa Cruz County Detention Center.

7. Defendant, Santa Cruz County, is a public entity, formed and designated as such pursuant to Title 11 of the Arizona Revised Statutes and may be held independently

liable or otherwise responsible for the wrongful conduct of its divisions, agents, officers, and employees, including the Santa Cruz County Sheriff's Office, which is operated by and/or under the auspices of the Santa Cruz County Board of Supervisors. Defendant Santa Cruz County is a government entity that acts through individuals to establish its policies and that is capable of being sued under state and federal law

8.      Defendant Santa Cruz County Board of Supervisors which is located at the Santa Cruz County Complex 2150 North Congress Drive, #120 Nogales, Arizona 85621, is vested with policy making authority and policy enforcement authority for Defendants Santa Cruz County and the Santa Cruz County Sheriff's Office.

9.      Defendants, Unknown Santa Cruz County Sheriff Detention Officers 1-10 ("Unknown Detention Officers"), were agents and/or representatives and/or employees of Santa Cruz County, who, at the time of the events complained of herein, were acting within the course and scope of their employment and under color of state law at the Santa Cruz County Jail. They were duly authorized employees and agents of Santa Cruz County and were acting within the course and scope of their perspective duties as staff of the Santa Cruz County Jail with the complete authority and ratification of their principals. Unknown Detention Officers 1-10 are sued in their individual and official capacities. Plaintiff will ask leave of the court to amend this Complaint to insert the true names and capacities of these defendants once the same have been ascertained along with the appropriate allegations to join said defendants in this action.

10.     Defendants, Unknown Santa Cruz County Sheriff Detention Medical Personnel 11-20 ("Unknown Detention Medical Personnel"), were agents and/or representatives and/or employees of Santa Cruz County, who at the time of the events complained of herein, were employed by the Santa Cruz County Sheriff's Office as staff at the Santa Cruz County Jail. They were duly authorized employees and agents of Santa Cruz County and were acting within the course and scope of their perspective duties as Santa Cruz County Sheriff's Office staff of the Santa Cruz County Jail with the complete authority and ratification of their principal Santa Cruz County. Plaintiff will ask leave of

the court to amend this Complaint to insert the true names and capacities of these defendants once the same have been ascertained along with the appropriate allegations to join said defendants in this action.

11.     Defendant DO Joel Hathaway #171 is an employee of Defendant Santa Cruz County, and at all times relevant to the complaint was employed in the capacity of a Detention Officer at the Santa Cruz County Jail.  DO Joel Hathaway #171 is an agent and/or representative and/or employee of Santa Cruz County, who, at the time of the events complained of herein, was acting within the course and scope of his employment and under color of state law.  Defendant DO Joel Hathaway #171 is being sued in his individual and official capacity.

12.     Defendant Anna "Gloria" Urias, an employee of Defendant Santa Cruz County, at all times relevant to the complaint, was employed in the capacity of a nurse at the Santa Cruz County Detention Center.  Defendant Anna Gloria Urias is a duly authorized employee and agent of Santa Cruz County Sheriff's Department and was acting within the course and scope of her perspective duties as inmate medical staff in the Santa Cruz County Detention Center with the complete authority and ratification of her principal, Santa Cruz County Sheriff's Department.  Defendant Anna "Gloria" Urias is being sued in her individual and official capacity.

**JURISDICTION AND VENUE**

13.     This action is brought and the jurisdiction of this court is invoked pursuant to Article 6, Section 14 of the Arizona Constitution and the Arizona Revised Statutes §§ 12-122 and 12-123 based upon the relief requested. This action further arises under the Due Process Clause of the Arizona Constitution and Fourteenth Amendment to the Constitution of the United States of America, pursuant to 42 U.S.C. § 1983 to redress the wrongful death of Francisco Beltran at the hands of Defendants.

14.     Venue is proper in Santa Cruz County pursuant to A.R.S. §12-401 as all Plaintiffs are residents of Santa Cruz County, Arizona, the underlying acts of this

complaint took place in Santa Cruz County, Arizona, and all Defendants reside in Santa Cruz County, Arizona.

### GENERAL ALLEGATIONS RELEVANT TO ALL COUNTS

15.    Pursuant to A.R.S. §§ 11-441(A)(5) and 31-101, Santa Cruz County Sheriff is to take charge of and keep the Santa Cruz County jail and the inmates in the County jail.

16.    Santa Cruz County and Santa Cruz County Sheriff are the final policymakers for the Santa Cruz County Sheriff's Office, and, therefore, Santa Cruz County is liable, under 42 U.S.C. § 1983, for unconstitutional policies, procedures, and/or customs.

17.    Notwithstanding Santa Cruz County Sheriff's constitutional duties, Santa Cruz County provides and assists the Santa Cruz County Sheriff in his responsibility to provide adequate medical care for the inmates of the Santa Cruz County Sheriff's Office Detention Center through Santa Cruz County Jail employees.

### Circumstances Resulting in Decedent Francisco Beltran's Incarceration in the Santa Cruz County Jail

18.    On November 25, 2019, Santa Cruz County Superior Court issued a warrant for Francisco L. Beltran as a result of his failure to pay child support with a purge in the amount of $100.00, *In Re Marriage of Francisco L. Beltran v. Imelda Beltran, Case No. DR-05-241.*

19.    On January 4, 2020, at approximately 2:56 a.m., Francisco was arrested by the Arizona Department of Public Safety Trooper Michael Soto ("Trooper Soto") based on the warrant issued in November 2019.

20.    Upon arrival to the Santa Cruz County Jail but prior to booking, Francisco was transported to Carondelet Holy Cross Hospital emergency room at approximately 3:38 a.m. for medical clearance because he had diabetes, hypertension, depression, insomnia, hypercholesterolemia, and GERD. Francisco was medically cleared and discharged at approximately 4:14 a.m.

21.     After receiving medical clearance, Trooper Soto booked Francisco into the Santa Cruz County Adult Detention Center ("Santa Cruz County Jail").

22.     According to Nurse Anna "Gloria" Urias ("Nurse Gloria") investigative interview, officers contact the jail nurse to inform them of any medical concerns regarding a soon-to-be inmate when the jail nurses are not physically present in the evening.

23.     The jail nurse will then determine whether the inmate should be accepted or sent out based on whether the jail can handle the soon-to-be inmates' medical condition.

24.     If concerns of the medical condition cannot be determined over the phone, the jail nurse will physically attend the jail to conduct a physical evaluation.

25.     If the officer is unable to reach the jail nurse, the officers will typically send out the soon-to-be inmate for medical clearance.

**Incarceration at Santa Cruz County Jail and Onset of Medical Problems**

26.     Shortly after being booked at the Santa Cruz County Jail, and throughout his time in custody, the decedent became symptomatic of heroin withdrawals. According to other inmates, Francisco became extremely ill shortly after his incarceration. Those symptoms included the following: profuse vomiting, tremors, chills, shakes, weakness, lethargy, freezing sensation, dizziness, difficulty breathing, and loss of appetite, among other symptoms.

27.     Upon the beginning of a jail nurse's shift, the nurse will access a medical box where all the medical information regarding an inmate's is documented. The nurse will then attempt to complete their medical pass prior to finishing the paperwork.

28.     Nurse Gloria first became aware of Francisco's medical condition when she opened the medical box on the morning of January 4, 2020.

29.     Morning medical had already passed by the time Nurse Gloria reviewed Francisco's medical records and for the first time was informed Francisco was transported to the hospital for medical clearance prior to being booked.

30. Upon review of Francisco's medical records, being a diabetic and the medications prescribed caught Nurse Gloria's attention.

31. The first-time Santa Cruz County Jail staff and medical staff had notice Francisco was suffering from heroin withdrawals was when Nurse Gloria conducted her Inmate Medical Checklist during evening medical pass on January 4, 2020 between approximately 4:00 p.m. to 5:00 p.m.

32. When Nurse Gloria conducted her evening medical pass on Francisco, she documented "inmate was brought in complaining of withdrawals", and informed he used Black Tar.

33. Nurse Gloria failed to ask Francisco when he last used Black Tar or ingested any other substances.

34. While reviewing Francisco's hospital records during the evening medical pass, she noticed he was taking medications the Santa Cruz County Jail did not have, but it was too late to contact anyone regarding Francisco's medications.

35. DO Joel Hathaway #171 ("DO Hathaway") began his shift on the morning of January 5, 2020 and was unaware of Francisco's medical condition.

36. When DO Hathaway approached Francisco's cell, he observed Francisco's obvious discomfort, other inmates stated he was not well, and "black" vomit was present.

37. Francisco plead that DO Hathaway assist him in receiving medical assistance.

38. Though Nurse Gloria was informed the previous evening that Francisco ingested Black Tar and was suffering from withdrawals, this information was not relayed to the detention officers who were responsible for health and safety of inmates. Francisco's medical condition was not relayed to DO Hathaway.

39. DO Hathaway escorted Francisco to medical at approximately 7:23 a.m. on January 5, 2020 and observed Francisco shaking and pacing back and forth.

/ / /

/ / /

40. Nurse Gloria performed a medical evaluation on Francisco where Francisco informed her again he was suffering from heroine withdrawals and threw up "black" in his cell.

41. Francisco demonstrated symptoms consistent with withdrawals, which included the inability to tolerate liquid or foods, continuous shaking, and clearly experiencing excruciating pain/discomfort.  He was gravely ill and needed prompt medical care and treatment.

42. Nurse Gloria assisted in "checking his sugar" then recommended Francisco be placed on comfort measures, including being watched every 30-minutes, be provided a blanket, be provided juices, and housed away from general population.

43. At approximately 8:00 a.m., DO Hathaway escorted Francisco from general population to Alpha Lincoln cell #106-1, which in essence is solitary confinement which is customarily used to house violent inmates or those with disruptive behaviors and has no cameras.

44. Nurse Gloria advised that Francisco be housed away from general population reasoning he could be closer to a restroom and be more easily monitored.

45. According to jail medical staff, Francisco could not be placed in the jail infirmary because it was being occupied by a female inmate demonstrating disruptive behavior and struggling with mental health issues. The female inmate was to remain placed in the infirmary until Tuesday when she would be seen by her doctor.

46. There is an understood internal protocol that when jail staff places an inmate in medical, that inmate is not to be removed until that staffer returns to their shift or provides a time frame to remove that inmate.

47. According to Nurse Gloria, another Santa Cruz County Jail nurse identified as Nurse Angelica Badillo (Nurse Angelica") was ordered by an unidentified officer to place the female inmate in medical.

/ / /

/ / /

48.     Nurse Gloria claims she requested if the female inmate could be removed from the infirmary so Francisco could be placed and treated but "they" preferred the female remain in the infirmary.

49.     DO Hathaway was ordered by Nurse Gloria to monitor Francisco in the Alpha Lincoln cell #106-1 every 30 minutes and provide fluids.

50.      Upon information and belief, there was no procedure or means of assuring compliance with the thirty (30) minute health watch orders as DO Hathaway's logs indicate he was not in compliance with monitoring Francisco as instructed. (See Paragraph 78)

51.     On three (3) separate occasions Francisco reported to DO Hathaway that he was in severe pain, "hurting bad", and needed medical attention.

52.     DO Hathaway observed that Francisco appeared to be "shaky" and "not looking good".

53.     Other inmates reported to DO Hathaway that Francisco had been throwing up.

54.     After each complaint, DO Hathaway alerted Nurse Gloria of Francisco's deteriorating condition and each time Nurse Gloria advised his complaints of pain were "normal" and Francisco did not need to be seen by her.

55.     DO Hathaway who at that time was the only officer monitoring Francisco, witnessed obvious symptoms yet failed to inform or consult the Jail Commander or the officer in charge during his shift.

56.     Contrary to DO Hathaway's log which reflected at 13:02:32 "Inmate was sleeping on his left side", DO Hathaway stated in his investigative interview that around 1:00 p.m. on January 5, 2020, Francisco informed DO Hathaway he was in excruciating pain and needed to go to the hospital.

57.     DO Hathaway informed Nurse Gloria that Francisco had not eaten that day and complained of severe pain but failed to inform Nurse Gloria or a supervisor of Francisco's plea to be transported to the hospital.

      a.  DO Hathaway's log reports do not reflect Francisco's complaints of sever pain and his request for transportation to the hospital.

58.    After being informed again that Francisco was complaining of excruciating pain and has not eaten, Nurse Gloria ordered Francisco be given Sprite and some crackers.

59.    Nurse Gloria pushed fluids, reasoning that loss of appetite is a normal withdrawal symptom.

60.    The Santa Cruz County Jail failed to log when/if Francisco ate during his incarceration, including Nurse Gloria.

61.    Nurse Gloria told investigators Francisco appeared normal when she saw him and that he "never put a physical complaint that he was in pain", despite DO Hathaway stating Francisco complained several times of excruciating pain on January 5, 2020.

62.    Nurse Gloria claims the only time she had contact with Francisco was "when she initiated it" and "he didn't even tell the officers he needed help".

63.    Nurse Gloria was in the housing area administering medications to inmates within close proximity to Francisco on two occasions but each time she deliberately failed and refused to evaluate or personally observe Francisco's current medical state, even though she had knowledge of his deteriorating condition.

64.    Contrary to DO Hathaway's log which stated he observed Francisco laying on his back and breathing, at approximately 4:45 p.m. on January 5, 2020, Francisco was found unresponsive in his cell and later declared deceased as is reflected in DO Pena's log stating: 16:45:55- Francisco was laying on his stomach (unresponsive), yet C. De La Riva said Francisco was laying between his stomach and left side.

65.    DO Hathaway's log records were not made contemporaneous to his activities and were false and inaccurate when compared to his interview.

66.    DO Hathaway failed to comply with his orders for a thirty (30) minute medical watch to monitor Francisco's medical condition.

67.     Nurse Gloria failed to instruct on what symptoms DO Hathaway should be monitoring as he did not know what he was to do when he conducted his watches.

68.     DO Hathaway conducted his watches by "looking through the window cell" to see if Francisco was still breathing.

69.     The cell Francisco was housed, the detention officers would be required to physically enter the cell as the inmate could not be fully visible by viewing through the cell's window.

70.     DO Hathaway stated that he was taught that "visible checks" were permitted, and the detention officers did not need to physically enter the cell.

71.     In compliance with health watches, officers monitor to ensure the inmates are "living breathing flesh", DO Hathaway clarifying that detention officers are to ensure the inmates are breathing when they are passing the cell.

72.     DO Hathaway has no medical training.

73.      According to paramedics, Francisco's body was stiffened as rigor mortis had set in as the paramedics believed Francisco had been dead for at least 1 ½ - 2 hours before their arrival.

74.     Nurse Gloria failed to consult a medical doctor or supervisor for guidance as Francisco's condition was deteriorating.

75.     Dehydration due to vomiting and diarrhea is the most significant health risk from heroine withdrawal, which can lead to death.

76.     Francisco was continuously vomiting, could not tolerate liquids nor foods, was continuously shaking, and informed jail staff he was experiencing excruciating pain and needed to go to the hospital.  Such symptoms would have been observed and obviously serious to both the medically trained staff and the untrained observers that there was an immediate need for prompt medical care and treatment.

77.     Health risks for heroin withdrawal rise with other physical complications. Diabetes, heart disease, and malnutrition can all increase the risk of dangerous heroin withdrawal symptoms.

**Defendant's Attempt to Conceal and Fabricate Evidence**

78.     DO Hathaway's logs indicate the following interaction with Francisco:

> "09:11:35-gave inmate juice;
>
> 09:46:28-Inmate laying on his back. Breathing observed;
>
> 10:28:29-Inmate laying on left side breathing observed;
>
> 10:58:15-Inmate standing by window;
>
> 11:50:13-Inmate was lying on his left side, breathing observed.
> Inmate still had a grape juice he did not drink yet;
>
> 12:24:54-Inmate meals served;
>
> 12:26:28-I gave inmate his tray;
>
> 13:02:32-Inmate was sleeping on his left side;
>
> 14:20:59-Inmate was sleeping on his stomach. Inmate appeared to
> be living breathing flesh;
>
> 15:16:44-Inmate was sleeping on his stomach and appeared to be
> living and breathing flesh;
>
> 16:11:00-Inmate laying on back, appeared to be living breathing
> flesh;
>
> 16:40:24-Inmate laying on back breathing observed"

79.     According to DO Hathaway's logs, on January 5, 2020, he last observed Francisco at 16:40:24 laying on his back and breathing.  However, Francisco was found unresponsive in his cell at 16:45:00, less than five (5) minutes after DO Hathaway claims he observed Francisco laying on his back breathing.

80.     The Nogales Fire Department was dispatched at 16:57:30 and on scene at 17:01:59. When questioned by medical staff the reason for dispatch regarding Francisco, the Deputy stated he was last seen an hour prior to them being called and was fine. Furthermore, Francisco's body stiffened due to the rigor mortis that set in, suggesting Francisco had been deceased for hours.   The EMT further mentioned that based on

Francisco's condition, he had to have been dead a minimum of 1 ½ - 2 hours before their arrival.

### Autopsy Results

81.    The Autopsy Report indicates "methamphetamine intoxication" was the cause of Francisco's death.   The toxicology report indicates that methamphetamine, amphetamine, fentanyl, norfentanyl, and morphine were in Francisco's system.

82.    Drug overdoses are treatable, especially if diagnosed early.   Unfortunately, as a result of the gross negligence and deliberate indifference for Francisco's well-being by Detention Officers and/or Detention Medical Personnel, he endured considerable pain, and as a result, suffered immensely until his last breath.   Francisco knew he would die without medical intervention.   Francisco not only suffered physically but also suffered mentally, knowing he was going to die.

83.    An opinion from an addiction medicine expert, who has reviewed the records, including the autopsy report and the toxicology report, has opined that the Santa Cruz County Sheriff's Office Adult Detention Center breached the standard of care when Francisco Beltran died from severe, untreated opioid withdrawal.   Although methamphetamines were found in his system, it is our expert's opinion that this was not the cause of his death.

84.    Francisco had co-morbidities with diagnoses of hypertension, diabetes and hyperlipidemia.   He complained of, and presented with, typical symptoms of opiate withdrawal including nausea, vomiting, diarrhea, body aches and inability to retain nutrition by mouth.

85.    It is our expert's opinion that Francisco should have either received medical attention at the detention center in the way of appropriate withdrawal medications including Buprenorphine or he should have been transferred to a medical facility that could have appropriately treated his opiate withdrawal. This opinion is stated to within a reasonable degree of medical certainty and it is highly likely that Francisco

would be alive today had the Santa Cruz County Sheriff's Office Adult Detention Center met the standard of care.

86.     At no time was Nurse Gloria concerned enough to physically evaluate Francisco and contact a physician for a medical evaluation of Francisco's physical state. In fact, the direct supervisor of the medical staff for the Santa Cruz County Detention Center, Health Services Director Jeff Terrell, as understood, is not a physician, and upon information and belief, has no background, training or degrees in the medical field.

87.     DO Hathaway was given the responsibility to observe Francisco every thirty minutes to monitor his medical condition but failed to monitor Francisco as ordered.

88.     The Santa Cruz County Detention Center is equipped with a medical unit for the medical treatment of inmates. While in custody, Francisco clearly exhibited physical signs of medical distress and was blatantly denied the services of medical staff and was not given the most basic medical treatment.

89.     The Defendants did not even perform a simple blood test on Francisco which would have revealed an electrolyte imbalance due to his profuse vomiting and inability to eat or drink.

90.     No medical tests were ever performed and Francisco was never seen by a physician during the time he was incarcerated at the Santa Cruz County Jail.

91.     Francisco requested to be taken to the hospital and his request was ignored. Francisco had a right to make his own medical decisions; no one was given the authority to make medical decisions on his behalf.  Francisco was denied proper medical treatment for his declining physical state.

92.     Due to the lack of medical training, written policies and procedures, and proper medical supervision Detention Medical Personnel and Detention Officers neglected to provide Francisco with the lifesaving medical treatment he was constitutionally entitled to and deserved.

/ / /

**FIRST CAUSE OF ACTION**

**42 U.S.C. § 1983-Deliberate Indifference to Serious Medical Needs**

**(Against All Defendants)**

93.     Plaintiffs incorporate by reference as though fully set forth herein all the allegations contained in paragraphs 1-92.

94.     During his incarceration at the Santa Cruz County Jail, Francisco was a pretrial detainee in Defendants' custody and at all times relevant to this cause if action, Defendants were acting under the color of state law.

95.     From the time Francisco was booked at the Santa Cruz County Jail until the time of his death, Defendants repeatedly denied Francisco proper medical care in repeated violation of his 14th Amendment constitutional rights.

96.     Nurse Gloria first became aware of Francisco's medical needs when she conducted her Inmate Medical Checklist during the evening medical pass on January 4, 2020.  She documented "inmate was brought in complaining of withdrawals", as he informed her that he had used Black Tar.

97.     On the morning of January 5, 2020, DO Hathaway was not given any information regarding Francisco's medical condition when he began his shift as there was nothing logged for Francisco's medical condition throughout the graveyard shift.

98.     DO Hathaway first became aware of Francisco's medical needs in the beginning of his shift on the morning of January 5, 2020 when he observed Francisco was extremely sick, "black" throw up was present in his cell, and other cell mates informed of his concerning symptoms.

99.      While escorting Francisco for medical attention, DO Hathaway observed Francisco having difficulty walking, was shaking, and pacing back and forth.

100.    By approximately 7:30 a.m. on January 5, 2020, both DO Hathaway and Nurse Gloria were informed of Francisco's heroine withdrawal symptoms.

101.    Nurse Gloria conducted the medical evaluation which included checking Francisco's sugar levels then recommended Francisco be placed on comfort measures,

including intervals of 30-minute watch, he be covered with a blanket, be provided juices every 30 minutes, and be housed away from general population.

102.   Francisco was escorted from the general population which had surveillance cameras, to an isolated segregated cell which had no cameras, could not be monitored electronically, and only contained a small window.

103.   From approximately 8:00 a.m. on January 5, 2020 until the time of death, DO Hathaway was given the responsibility by Nurse Gloria to monitor Francisco in his cell every 30 minutes.DO Hathaway subjectively knew (or, objectively, should have known) there was a substantial risk Francisco faced serious medical risks and had serious medical needs when he observed and was informed of Francisco's obvious deteriorating physical condition from the beginning of his shift until the time of his death.

104.   Despite this knowledge, DO Hathaway was deliberately indifferent to Francisco's serious medical risks and needs by, among other things, failing to properly administer health watches over him, failing to inform medical providers of Francisco's plea to immediately be transported to the hospital, and failing to inform a supervisor of Francisco's condition as it worsened.

105.   Nurse Gloria subjectively knew or should have known there was a substantial risk Francisco faced serious medical risks and had serious medical needs, including heroine withdrawal, when Francisco disclosed he used Black Tar on the evening of January 4, 2020 and would be going through withdrawals according to the Inmate Medial Checklist.

106.   On the morning of January 5, 2020, Nurse Gloria was informed of Francisco's deteriorating condition which included his vomit of up Black Tar, his complaint of severe pain and discomfort, shaking, pacing back and forth, difficulty walking, and the inability to tolerate food or liquids.

107.   Nurse Gloria was notified several times throughout the day while Francisco was placed in an isolated cell that he was complaining of severe pain, was visibly shaking, could not tolerate liquids nor foods, and was vomiting.

108.     Nurse Gloria was informed on many occasions of Francisco's deteriorating condition but despite this knowledge, she was deliberately indifferent to Francisco's serious medical risks and needs by, among other things, directing the refusal of basic medical treatment, failing to provide Francisco with sufficient medical evaluations, failing to provide medical care, failing to respond to his numerous complaints of excruciating physical pain and declining condition, failing to properly administer health watches over him, failing to inform a supervisor of Francisco's severe declining condition, and failing to transport him to the hospital when he pleaded to be transported to the hospital prior to his death.

109.     As a result of Defendant's repeated denial of proper safety and medical care, Francisco spent his time at the Santa Cruz County Jail in unnecessary and excruciating pain and suffering in agony.

110.     Defendant's actions/inactions exacerbated Francisco's condition to the point where his life was placed in jeopardy.

111.     Defendants, by ignoring Francisco's deteriorating condition, failing to provide proper medical care, and refusing to inform or consult with supervisors, acted with deliberate indifference to a serious health condition and the medical needs of Francisco.

112.     As Francisco is deemed a pretrial detainee, Defendants by their acts of deliberate indifference in failing to provide medical care to treat his serious medical condition, the conduct thereof constitutes the violation of the Due Process Clause of the Fourteenth Amendment of the Constitution.

113.     It should be adequately clear that a reasonable jail official would comprehend that by denying medical care, Francisco was exposed to undue suffering or threat of tangible residual injury, which, in the end, proved to be fatal.

114.     Defendants were deliberately indifferent by, without limiting other acts and behaviors: (1) failing to tend to decedent's serious medical condition; (2) failing to monitor decedent who was known to face severe drug withdrawal; (3) failing to

refer/transfer decedent to a medical facility such as a hospital for close supervision, diagnostic testing, and treatment; (4) failing to provide medication to treat symptoms of drug withdrawal; (5) failing to inform or consult with supervisors when Defendants observed Francisco's severe physical decline.

115.   Had the Defendants and their employees, agents, and servants, not acted with deliberate indifference to the obvious and serious health needs of Francisco and provided proper medical attention, he would not have died.

116.   Such acts and omissions of the Defendants violated Francisco's constitutional rights guaranteed under the Fourteenth Amendment to the United States Constitution as Defendants knew by failing to treat the effects of acute withdrawal from heroin, such as malnutrition, chills, and dehydration, additional serious injury would occur.

117.   As an actual and proximate cause of Defendants' deliberate indifference to Francisco's serious medical risks and needs, Francisco suffered injuries prior to his death, including those arising from his pre-death pain and suffering.

118.   Defendants, moreover, acted (or failed to act) in deliberate and/or reckless disregard of Francisco's constitutionally protected rights. Plaintiffs thus seek an award of exemplary damages against these defendants in an amount sufficient to punish this conduct and deter such conduct in the future.

## SECOND CAUSE OF ACTION

### 42 U.S.C. § 1983-Liability for Unconstitutional Custom or Policy

### (Against Defendants Sheriff Hathaway and Santa Cruz County)

119.   Plaintiffs incorporate by reference as though fully set forth herein all of the allegations contained in paragraphs 1-127.

120.   On and before to January 4, 2020 (and continuing to the present day) Defendants Santa Cruz County and Sheriff Hathaway deprived Plaintiff decedent of the rights and liberties secured to him by the Fourteenth Amendment to the United States Constitution, in that Defendants and their supervising and managerial employees, agents,

and representatives, acting with reckless and deliberate indifference to the rights and liberties of Plaintiff decedent and of the persons in his class, situation and comparable position in particular, knowingly maintained, enforced and applied an official recognized custom, policy, and practice of:

    a. Failure to establish and/or implement policies, practices and procedures to ensure inmates at the Santa Cruz County Jail receive appropriate and proper medical care for serious health needs, and if necessary, health care services outside the jail, and to do so without regard to profit or expense.

        i. Defendant's failure was demonstrated when no further action is taken when an inmate complains to a Santa Cruz County Jail healthcare provider of heroine withdrawals, particularly Black Tar.

        ii. When an inmate demonstrates severe withdrawal symptoms, including the vomit of Black Tar, shaking, loss of appetite, and complaints of severe pain, the Santa Cruz County Jail healthcare provider removed the inmate to an isolated cell, according to jail staff, so inmate could be closed to the restroom and could be more easily monitored.

        iii. If the infirmary is occupied by a female inmate, a male inmate cannot be treated at the infirmary and is the housed in isolation that lacks surveillance cameras.

        iv. Nursing staff lack the knowledge and training to treat inmates suffering from heroin withdrawal as they medically treat by advising the inmates be given juice, a blanket, and be monitored every (30) minutes by a DO.

        v. Failure to ensure medical watches are being conducted within the medically advised time.

      vi.   When an inmate's physical condition deteriorates over the course of several hours, Santa Cruz County Jail healthcare providers fail to conduct any further or follow-up medical care/evaluations to determine whether an inmate requires transportation for healthcare services outside the jail.

      vii.  DOs are not trained to immediately inform Santa Cruz County Jail healthcare providers, jail staff or supervisor of an inmate's plea to be transported to the hospital.

      viii.  Sheriff and Santa Cruz County's failure to provide staff with adequate training to determine whether an inmate requires further medical care; failure to inform supervisors when an inmate's physical condition deteriorates; and Santa Cruz County Jail supervisors' failure to act when an inmate's physical condition is deteriorating.

b.  Failure to adequately monitor the deteriorating medical health conditions of inmates.

      i.  There are no procedures or means of assuring compliance with (30) minute medical watch orders nor are there adequate procedures or protocols of what specifically should be monitored when an inmate is on a 30 minute medical watch.

      ii.  When an inmate is placed from a general population cell to an isolated cell, detention officers only conduct a "visible" check and are not required to physically enter the cell.

c.  Failure to ensure through training, supervision, and discipline that detention officers and medical staff adequately communicate and document inmates' deteriorating medical and mental health conditions.

      i. Detention officers are not informed and/or lack access to an inmate's severe medical condition documented in the Inmate Medical Checklist by a Santa Cruz County Jail healthcare provider.

      ii. When conducting their (30) minute health watches, detention officers are responsible to promptly and immediately notify the Santa Cruz County Jail healthcare provider, other jail staff or supervisor of inmate's plea to be transported to a hospital.

d. Failure to ensure through training, supervision, and discipline that detention officers and medical staff properly respond to an inmates' deteriorating medical health conditions.

      i. Lack of medical protocol when an inmate informs a Santa Cruz County Jail healthcare provider of Black Tar withdrawal.

      ii. Lack of medical protocol when an inmate's symptom worsen.

      iii. Lack of medical protocol when infirmary is unavailable.

      iv. Lack of medical protocol by Santa Cruz County Jail healthcare provider and Sheriff regarding manner of treating a heroin or other dangerous drug withdrawing inmate.

      v. Lack of medical or jail protocol regarding circumstances when an inmate shall be moved to isolation.

      vi. Lack of medical or jail protocol when an inmate's medical conditions deteriorate and makes repeated requests for medical attention.

vii.  Lack of medical or jail protocol by Santa Cruz County and Sheriff regarding follow-up medical evaluations for an ill inmate.

viii.  Lack of medical or jail protocol by Santa Cruz County and Sheriff as to when an inmate should be transported to a hospital for medical care and treatment.

ix.  Lack of medical or jail protocol by Santa Cruz County and Sheriff to ensure proper medical attention and monitoring of an inmate's deteriorating medical conditions.

e.  Inadequately staffing its facility with medical personnel thereby showing deliberate indifference to the serious health needs of its inmates, including Francisco Beltran.

i.  Jeff Terrell is the Health Services Director, overseeing and directing licensed nurses and other medical staff, without background, training or degrees in the medical field.

ii.  Upon information and belief, Jeff Terrell has instructed medical staff in the past not to fill prescriptions for inmates in an attempt to save money.

f.  Defendants failed to maintain adequate and proper training necessary to educate deputies and medical staff as to the Constitutional rights of inmates to prevent the consistent and systemic failure to provide medical care, especially to those facing withdrawals.

g.  Providing a deliberate indifference to the serious medical needs of inmates when defendants failed to take any meaningful corrective measures despite being previously placed on notice of their egregious practices resulting in prior in-custody deaths, some involving similar serious medical conditions.  Marcos Antonio Gourdin, Case No 4:18-cv-00243-JGZ-PSOT.

h. Inadequately supervising, training, controlling, assigning, and disciplining employees including deputy sheriffs and medical staff stationed at the Santa Cruz County Jail.

i. Maintaining grossly inadequate procedure and protocols in the event inmates facing a serious medical condition such as when a drug withdrawal takes place.

j. Withholding not only urgent life sustaining medical care, but routine care to inmates in need of medical care.

   i. Santa Cruz County and Sheriff failed to act when informed an inmate is withdrawing from Black Tar while conducting an evening medical check.

   ii. Detention officers and medical staff failed to act when they have notice of an inmate's deteriorating physical condition.

   iii. Medical staff's refusal to conduct an adequate medical evaluation or conduct additional medical evaluations when an inmate's condition is severally deteriorating.

   iv. Detention officers, responsible to monitor an inmate suffering from severe withdrawal symptoms in an isolated cell, failed to inform medical staff or supervisors of inmate's specific pleas for transportation to the hospital.

121.   Defendants, together with various other officials whether named or unnamed, has either actual or constructive notice of the deficient policies, practices, and customs alleged in the paragraphs above. Despite having knowledge as stated above, these defendants condoned, tolerated, and through actions and inactions thereby ratified such policies. Said defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of Plaintiff decedent, and other individuals similarly situated.

///

122.    By perpetuating, sanctioning, tolerations, and ratifying outrageous conduct and other wrongful acts, defendants acted with an intentional, reckless, and callous disregard for the well-being of Plaintiff decedent and his constitutional as well as human rights.

123.    These final policymakers were well aware jail staff were not properly attending to the medical needs of inmates suffering from withdrawals, not communicating between staff regarding the status of inmates when changing shifts, and inaccurately documenting time logs for health checks. Jail staff thus needed training or re-training. Training was inadequate to prevent the violation of detainees' constitutional rights.

124.    At the time of this incident, these final policymakers knew jail staff were conducting cell checks in a way that resulted in unnecessary harm and/or death to detainees. These final policymakers knew jail staff routinely failed to appropriately monitor individuals suffering from medical conditions requiring health watches.

125.    Francisco's Fourteenth Amendment rights were violated as an actual and proximate result of the County's and the Department's: (a) deliberate indifference to the training needs of jail staff, including corrections and medical staff; and (b) a *de facto* customs, practices, and polices of (i) failing to coordinate and share critical medical information among jail staff; (ii) failing to conduct proper cell checks; (iii) failing to investigate misconduct, take appropriate remedial action, and covering up wrongdoing, Francisco suffered damages prior to his death, including those arising from his pre-death pain and suffering, in an amount to be proven at trial.

### **THIRD CAUSE OF ACTION**

### **Gross Negligence Committed by Defendants**

### **(Against Santa Cruz County, Sheriff Hathaway, Sheriff Estrada, DO Hathaway, and Nurse Gloria)**

126.    Plaintiffs incorporate by reference as though fully set forth herein all of the allegations contained in paragraphs 1-135.

127.    Defendant Sheriff Hathaway has a duty to operate and manage the Santa Cruz County Jail in a manner so as to act or prevent the acts and/or omissions alleged herein.

128.    At the time this incident occurred, Sheriff Estrada was the elected sheriff of Santa Cruz County and had the duty to operate and manage the Santa Cruz County Jail in a manner so as to act or prevent the acts and/or omissions alleged herein.

129.    Defendants owed Francisco Beltran, as an inmate in Defendant's custody, care and control, a duty of care to protect his health and physical safety.

130.    Defendants were grossly negligent and their conduct fell below a reasonable standard of care when they refused inmates of basic medical care and failed to discharge their duties as custodians or health care providers to Francisco Beltran.

131.    Specifically, Defendants failure/refusal to provide minimal medical care when on several occasions Francisco and other inmates notified Defendants of his severe and painful symptoms of suffering from heroine withdrawal.

132.    It was foreseeable that as a result of Defendants' acts and omissions, as described above, Francisco Beltran's heroine withdrawal symptoms would worsen, resulting in his excruciating physical injury, suffering, and ultimate death.  Defendants' breach proximately caused injuries and damages and death to Francisco Beltran.

133.    As a direct and proximate result of the defendants' aforementioned conduct, Plaintiffs set forth that defendants are liable for their damages including but not limited to funeral and burial related expenses, and damages to provide for the Plaintiffs' deprivations and injuries as a result of the loss of decedent's support, consortium, comfort, counsel, familial relations, association, care and services.

## **FOURTH CAUSE OF ACTION**
### **Medical Negligence**
### **(Against Defendants Santa Cruz County and Anna Gloria Urias)**

134.    Plaintiffs incorporate by reference as though fully set forth herein all of the allegations.

135.   On January 5, 2020, Francisco Beltran was in the custody and control as an inmate in the Santa Cruz County Jail and throughout his incarceration, he was struggling with heroine withdrawals.

136.   While Francisco Beltran was incarcerated, he was seen and treated by Nurse Gloria and she owed him a duty of care of a reasonably qualified nurse under like or similar circumstances.

137.   Francisco Beltran desperately required prompt medical attention from Defendants. Nurse Gloria had actual or constructive knowledge of Francisco's need for immediate medical care and deliberately chose not to furnish Francisco Beltran with medical care.

138.   Defendants are liable for their employees' breach of their duty to summon required immediate medical care while acting in the course and scope of their employment under the doctrine of respondeat superior.

139.   As a direct and proximate result of Nurse Gloria's negligent acts and/or omissions hereinabove, individually and as an employee and/or agent of Defendant Santa Cruz County, Francisco Beltran suffered physical injury, resulting in his painful and untimely death.

## FIFTH CAUSE OF ACTION

### Intentional or Negligent Infliction of Emotional Distress Pursuant to Arizona Common Law Against All Defendants

140.   Plaintiffs incorporate by reference as though fully set forth herein all of the allegations contained in paragraphs 1-149.

141.   As described above, the conduct of the Defendants was extreme and outrageous as Defendants either intended to cause emotional distress or recklessly disregarded the near certainty that such distress would result in Plaintiff decedent incurring severe emotional distress.

142.   In addition, as a direct and proximate result of Defendants' acts, omissions, and violations alleged above, Plaintiff decedent suffered severe physical pain, mental

anguish, and emotional distress, suffering and anxiety in and about his body, which have caused and will cause him to incur medical expenses for care and treatment, disability, and pain and suffering, as well as a loss of earnings in an amount to be proven at trial.

### SIXTH CAUSE OF ACTION

### Survival Action Against All Defendants

143.   Plaintiffs incorporate by reference as though fully set forth herein all of the allegations contained in paragraphs 1-152.

144.   As a direct and proximate result of one or more of the foregoing negligent acts and/or omissions, Plaintiff decedent incurred pain and suffering, disability, emotional distress, loss of normal life, and died.

145.   At the time of Mr. Beltran's death, Plaintiff decedent left surviving his children Francisco Beltran Jr., Estevan Beltran, and Yazmine Beltran.

146.   Had Plaintiff decedent survived, he would have been entitled to bring an action for the injuries he suffered and that action has survived his death, pursuant to A.R.S. §14-3110, commonly known as the Survival Act.

147.   Georgina Beltran Kemp in her capacity as the Personal Representative of the Estate of Francisco L. Beltran, brings this "Survival Action", pursuant Arizona Revised Statute §14-3110, providing: "Every cause of action, except a cause of action for damages for breach of promise to marry, seduction, libel, slander, separate maintenance, alimony, loss of consortium or invasion of the right of privacy, shall survive the death of the person entitled thereto or liable therefor, and may be asserted by or against the personal representative of such person, provided that upon the death of the person injured, damages for pain and suffering of such injured person shall not be allowed."

### SEVENTH CAUSE OF ACTION

### Wrongful Death Action Pursuant to A.R.S. §12-611 Against All Defendants

148.   Plaintiffs incorporate by reference as though fully set forth herein all of the allegations contained in paragraphs 1-157.

/ / /

149.   As a direct and proximate result of one or more of the foregoing acts and/or omissions of Defendants, Francisco Beltran sustained injuries that resulted in his death on January 5, 2020.

150.   As a direct and proximate result of one or more of the foregoing conditions, the survivors of Francisco Beltran have sustained substantial pecuniary loss, including the loss of his society, companionship, services, and support, and expenses for funeral and burial.

151.   At the time of his death, Francisco Beltran left surviving his parents, Jose Beltran and Martha Beltran, along with his three children, Francisco Beltran Jr., Estevan Beltran, and Yazmine Beltran.

**EIGTH CAUSE OF ACTION**

**Respondeat Superior/Vicarious Liability Against Defendants**

**Santa Cruz County and Sheriff Hathaway**

152.   Plaintiffs incorporate by reference as though fully set forth herein all of the allegations contained in paragraphs 1-161.

153.   At all times relative hereto, the Santa Cruz County Jail deputies and medical employees were acting within the course and scope of their employment and acted as agents and servants Santa Cruz County.

154.   Defendants Santa Cruz County and Sheriff Hathaway are vicariously liable for the acts and conduct of the employees of Santa Cruz County Sheriff's Office relating to the wrongful death of Francisco Beltran.

155.   At all times relative hereto, Defendant DO Hathaway was working as a Detention Officer for Defendant Santa Cruz County Sheriff's Office, and was acting within the course and scope of his said agency and employment with  Santa Cruz County Sheriff's Office and he acted as an agent and servant of Santa Cruz County Sheriff's Office as set forth herein.

/ / /

156.    At all times relative hereto, Defendant Nurse Gloria was working as a Detention Medical Personnel for Defendant Santa Cruz County Sheriff's Office, and was acting within the course and scope of her said agency and employment with Santa Cruz County Sheriff's Office and she acted as an agent and servant of Santa Cruz County Sheriff's Office as set forth herein.

157.    Defendants Santa Cruz County and Sheriff Hathaway are vicariously liable for the acts and conduct of DO Hathaway and Nurse Gloria which was the actual and proximate cause related to the wrongful death of Francisco Beltran as alleged herein.

## DEMAND FOR JURY TRIAL

158.    Plaintiffs hereby request and demand a jury trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray that this court enter judgment in their favor and against Defendants, jointly and severally, as follows:

A.    For general damages in an amount to be proven at trial, as to the causes of action, claims, and theories of relief alleged herein.

B.    For punitive damages against the individually named defendants, including those whose identies have not yet been ascertained, in an amount deemed just and reasonable as to the causes of action, claims, and theories of relief alleged herein.

C.    For plaintiffs' costs and attorney's fees against all the defendants, pursuant to 42 U.S.C. § 1988.

D.    For such other and further relief as the court deems just and proper in the premises.

**DATED** this 15th day of March, 2021.

SLACK-MENDEZ LAW FIRM

*Charles Slack-Mendez*
/s/_____
Charles Slack-Mendez
*Attorney for Plaintiffs*